**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

MIQUEL PEREZ-HERNANDEZ,

Petitioner,

v. Case Number: 08-14385

JOHN PRELESNIK,

Respondent.
_________________________________/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Miquel Perez-Hernandez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Handlon Correctional Facility in Ionia, Michigan. In his petition, he challenges his convictions for first-degree murder and felony firearm. For the reasons set forth below, the court will deny the petition and will also decline to issue a certificate of appealability.

## I. BACKGROUND

### A. Factual History

Petitioner's convictions arise from the shooting death of Fabian Ponce-Mejia, on March 28, 2004, near El Comal, a restaurant in southwest Detroit. On February 3, 2005, before the Honorable Patricia Fresard, Wayne County Circuit Court Judge, a joint trial of Petitioner and his co-defendant Marcos Ramirez-Garcia began before separate juries. Petitioner was charged with first degree-murder, Mich. Comp. Laws § 750.316, and felony firearm, Mich. Comp. Laws § 750.227b. Petitioner's co-defendant was

charged with second degree-murder, Mich. Comp. Laws § 750.317, and felony firearm, Mich. Comp. Laws § 750.227b.

Fernando Sanchez, a friend of the deceased who had gone with him to the restaurant, testified that, as he and the victim were exiting El Comal at approximately 1:50 a.m., three men in a black Dodge Stratus drove past, shouting something. Ponce-Mejia shouted back at them. Sanchez told Ponce-Mejia to ignore them because he did not want any problems. Sanchez and Ponce-Mejia then separated, and Sanchez continued to walk to his van. As he was opening the door, Sanchez heard three to four gunshots. He drove his van around the block and saw Ponce-Mejia lying on the ground. Sanchez denied being in a gang, and to his knowledge, Ponce-Mejia was not in a gang.

Gerardo Zuniga testified that he saw Ponce-Mejia at a restaurant drinking beer. After he left the restaurant, he heard some gunshots. Zuniga testified that Ponce-Mejia had left the restaurant ten minutes earlier. Zuniga saw three men in a black car speeding by on the street, but he was unable to give the police a further description. He noticed Ponce-Mejia lying on the ground of the alley, and he waited for the police to arrive so he could inform them of what he had seen.

Detroit Police Officer Dario Muniz testified that he was on patrol when he was flagged down by Gerardo Zuniga, who reported the events. Officer Muniz testified that Zuniga led him to where the Ponce-Mejia was lying on the ground in an alley, suffering a gunshot wound to the back. Law enforcement secured the scene. Officer Muniz received information about a possible vehicle leaving the alley. Investigator Collins and Sergeant Anderson responded to the location of the shooting and examined the scene. Investigator Collins instructed the evidence technician, Officer Nairhos, to make a

sketch of the scene to locate and document any evidence. A 9-mm caliber shell casing and a spot of blood were found in an alley behind a garage.

Dr. Boguslaw Pietak, the medical examiner who performed the post-mortem examination of Ponce-Mejia, testified that the cause of death was four gunshot wounds to the right chest, the right leg, the right back, and the left back. There was no evidence of close-range firing. A toxicology test revealed the presence of alcohol and cocaine.

Detroit Police Officer Lloyd Allen, an expert in firearms examination, determined that three of the bullets recovered from the body were fired from the same weapon. The fourth bullet recovered from the body was from a different weapon. The police never located the murder weapons.

Petitioner was arrested by Officer Eric Wymer after Wymer saw him while conducting surveillance in connection with the execution of a search warrant at the home of Ernesto Herrera, an uncle of Petitioner who later testified at trial that Petitioner lived with him. Herrera told police that Petitioner owned a four-door black Dodge which had subsequently disappeared. He also told them he heard Petitioner talking on the telephone about the death of someone at the restaurant. Petitioner spoke disparagingly of the person who was killed and said he thought police were looking for him.

Detroit Police Officer Moises Jimenez, Officer-in-Charge, testified at trial that he was unable to locate the weapons involved in the shooting. He testified that Secretary of State records showed that Petitioner at one time had an older four-door Dodge Stratus registered to him, but Officer Jimenez was unable to locate the vehicle.

Officer Jimenez further testified that he was not aware that Petitioner belonged to a gang. After taking Petitioner into custody, Officer Jimenez advised him of his *Miranda*

rights. Officer Jimenez translated the Detroit Police Constitutional Rights Form into a Spanish form, with the exception of the last line of the form which stated, "I have not been threatened or promised anything and I now desire and agree to answer any questions put to me or make a statement." (Trial Tr. vol. V, 52.) Officer Jimenez read the rights on this Spanish form to Petitioner, and Petitioner signed his name next to each right on this form.

Officer Jimenez then asked Petitioner if he was willing to talk to him and answer questions, and Petitioner indicated that he was willing to do so. During this interview, Petitioner stated that he and rival gang members had an altercation earlier at the International Club. He admitted to firing at Ponce-Mejia, saying that, "the guy, like picked up his shirt and we fired at him." (*Id.* at 25.) Petitioner did not request an attorney and never requested that the interview stop. Petitioner also had the opportunity to review the written statement and make changes before he signed the form. Petitioner did not appear under the influence of drugs or alcohol and had been in custody for a few hours. He was not handcuffed, did not appear sick, and did not request food or water.

Michigan State Police Trooper Terry Schmike testified at trial that he was part of the team that executed a search warrant on the house where Petitioner's co-defendant was arrested, located at 8390 Longworth in Detroit. The police recovered from the Longworth house photographs of Petitioner possessing a gray semi-automatic handgun and evidence of his gang affiliation. Schmike also testified that a bulletproof vest was recovered from the house. Police additionally found a shoulder holster, several weapons, ammunition, and spent rounds inside the house. Officer Sanchez also

participated in the execution of the search warrant, and recognized some graffiti in the house belonging to the Surenos, a rival to another gang known in southwest Detroit as the Latin Counts. The photographs taken from the residence depicted what appeared to be gang hand signs and various colors associated with the gangs. Two .38-caliber handguns and twenty rounds of .38-caliber ammunition were also recovered from the house. Petitioner's co-defendant, Marcos Ramirez-Garcia, was arrested outside of the house. The court denied a defense motion for mistrial based on the introduction of the evidence seized from the house. Petitioner's trial counsel objected to the evidence and argued that it should be ruled inadmissible under Michigan Rules of Evidence 404(b),[1] but the court disagreed.

**B. Procedural History**

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of premeditated murder and felony firearm. On March 2, 2005, he was sentenced to life imprisonment for first-degree murder and two years imprisonment for felony firearm. Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. Counsel's failure to move to suppress Petitioner's statement to the police and failure to object to the admission of evidence found during the execution of a search warrant denied him the effective assistance of counsel; and

---

[1] Michigan Rules of Evidence 404(b) provides, in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in this case." MRE 404(b).

II. There was insufficient evidence to support Petitioner's convictions and the Circuit Court erred in denying his motion for a directed verdict.

On January 23, 2007, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Perez-Hernandez*, No. 261729, 2007 WL 162520 (Mich. Ct. App. Jan. 23, 2007). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. On July 30, 2007, the Michigan Supreme Court denied leave to appeal. *People v. Perez-Hernandez*, 735 N.W.2d 284 (Mich. 2007). On October 15, 2008, Petitioner filed the instant petition for a writ of habeas corpus, asserting the same claims presented to the Michigan Court of Appeals.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 413. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

In his first claim for habeas corpus relief, Petitioner asserts he is entitled to a new trial because he was denied effective assistance of counsel at trial. Specifically, Petitioner submits that trial counsel was ineffective in: (i) failing to challenge admission of the statement Petitioner was said to have made to police in a *Walker* Hearing prior to trial; and (ii) failing to object to the admissibility of evidence seized in a search warrant raid.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. *Id.* at 687. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, a petitioner "must show that counsel's deficient

performance prejudiced the defense." *Id.* A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal citations omitted).

There can be no constitutional deficiency in counsel's failure to raise meritless issues. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *Hayden v. U.S.*, No. 99-20011, 2008 WL 220612, at *8 (E.D. Mich. 2008). To determine whether Petitioner received ineffective assistance of trial counsel, this court will therefore first examine the merits of the issues Petitioner asserts that trial counsel failed to raise.

Petitioner argues that counsel was ineffective for failing to challenge the voluntariness of Petitioner's statement to the police admitting his involvement in the shooting. Petitioner specifically asserts that Officer Jimenez's written translation of the official Detroit Police Constitutional Rights Form which Petitioner signed did not include

the last line of the original form in English which stated, "I have not been threatened or promised anything and I now desire and agree to answer any questions put to me or make a statement." The Sixth Circuit has held that even where a defendant completely refuses to sign a form waiving *Miranda* rights, there is no constitutional violation of rights where the defendant freely speaks to police after being advised of his *Miranda* rights. *Davie v. Mitchell*, 547 F.3d 297, 306 (6th Cir. 2008) (citing *United States v. Kaufman*, 92 Fed. App'x 253, 256 (6th Cir. 2004)). In so ruling, the Sixth Circuit relied on the Supreme Court's holding that the Constitution did not require an explicit waiver of *Miranda* rights. *Davie,* 547 F.3d 306 (citing *North Carolina v. Butler,* 441 U.S. 369, 374-76 (1979)). Thus, a written waiver is not necessary to establish a knowing, intelligent, and voluntary waiver of *Miranda* rights. *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002).

In addition, "the Constitution does not require police to administer the particular *Miranda* warnings." *Dickerson v. U.S.*, 530 U.S. 428, 440 n.6 (2000). The *Miranda* Court itself stated that its "decision in no way creates a constitutional straitjacket" and that "other procedures which are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it" can pass constitutional muster. *Miranda*, 384 U.S. at 467; *see also Duckworth v. Eagan*, 492 U.S. 195, 202 (1989) ("*Miranda* warnings [need not] be given in the exact form described in that decision.").

The Michigan Court of Appeals rejected Petitioner's claim that counsel was ineffective for failing to challenge this statement because it found that the confession was voluntary. The court concluded, in relevant part:

> The police read Hernandez his rights, translated them into Spanish,Hernandez said that he understood them, and he signed and initialed the waiver form. Hernandez offers no evidence to support his claim that his statement was involuntary; however, the record shows that Hernandez confessed to the crime after he was read his constitutional rights and he indicated that he understood his rights. Based on the evidence presented, we conclude that Hernandez's confession was voluntary.

*Perez-Hernandez,* No. 261729, 2007 WL 162520, at *7.

Petitioner has not shown that the state court's conclusion that his confession was voluntary was contrary to or an unreasonable application of Supreme Court precedent. Petitioner does not dispute that, after taking Petitioner into custody, Officer Jimenez advised him of his *Miranda* rights. Officer Jimenez translated the Detroit Police Constitutional Rights Form into Spanish. Officer Jimenez also read the rights on this Spanish form to Petitioner, and with the exception of the last line of the form, which was not translated, Petitioner signed his name next to each right provided on the translated form. Officer Jimenez testified that when he asked Petitioner whether he was willing to speak to him, Petitioner indicated that he was willing to answer questions and never asked for an attorney nor requested that the interview stop. The court concludes that, even though the Petitioner did not sign the last sentence of the Detroit Police Constitutional Rights Form waiving his *Miranda* rights, the Michigan Court of Appeals' conclusion that Petitioner's confession was voluntary was reasonable. Moreover, because *Miranda* does not require that police officers follow a specific script in advising a suspect of his rights, the failure to translate the last sentence of the *Miranda* form did not compromise the voluntariness of Petitioner's waiver. *See California v. Prysock*, 453 U.S. 355, 359 (1981) ("[N]o talismanic incantation was required to satisfy [*Miranda's*] strictures."). Petitioner's argument that his statement was involuntary is meritless, and

Petitioner cannot show that counsel was ineffective for failing to move for suppression of the statement. *See Mapes*, 171 F.3d 408, 413.

Next, Petitioner claims that counsel should have moved to suppress evidence seized in the search warrant raid on the house located at 8390 Longworth in Detroit but failed to do so. However, the Michigan Court of Appeals correctly noted that counsel did indeed object to this evidence, moving for a mistrial. Counsel argued that because Petitioner was already in custody when the Longworth home was search, the evidence seized during that search pertained to Petitioner's co-defendant, not his client. *Perez-Hernandez,* 2007 WL 162520, at *7. The trial judge denied this motion for mistrial, ruling that the evidence was relevant to the issue of motive. *Id.*[2] The Michigan Court of Appeals was therefore correct in its conclusion that "[b]ecause defense counsel objected to the evidence, [Petitioner's] ineffective assistance of counsel claim is without merit." *Id*. Petitioner thus cannot show that counsel was ineffective by failing to move to suppress the evidence where counsel in fact did object and move for a mistrial, although the trial court held that the evidence was properly admitted.

---

[2] The Court of Appeals cast this decision as the trial court choosing between "relevant evidence" – which would presumably be acceptable – and "a separate bad act" – which presumably would not. *Perez-Hernandez,* 2007 WL 162520, at *7. The Rules of Evidence, however, admit to no such distinction. The focus of the salient part of the Rule at issue is purely upon the purpose for which evidence of "other crimes, wrongs, or acts" is offered. Such acts, which are almost always "separate" as compared to the acts involved in the case at issue (and often "bad" as well), are "not admissible to prove the character of a person in order to show conformity therewith," but "may . . . be admissible for other purposes." MRE 404(b). Further, while it can be stipulated that just about all "crimes" and "wrongs" are "bad," there is no *requirement* that the proffered acts be "bad" in order to qualify under this Rule. The acts must simply be not otherwise prohibited, e.g., character/conformity evidence, while also capable of proving something of significance to an issue in the case.

**B. Sufficiency of the Evidence**

In his second claim for habeas corpus relief, Petitioner claims that the evidence presented at trial was legally insufficient to support a guilty verdict for first-degree premeditated murder.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Pursuant to 28 U.S.C. § 2254(d)(1), this court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, found that the trial court did not err in denying Petitioner's motion for a directed verdict of acquittal on the charge of first-degree murder. *Perez-Hernandez,* 2007 WL 162520, at *9. The court held, in pertinent part:

> "When reviewing a trial court's decision on a motion for a directed verdict, the Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v. Aldrich,* 246 Mich. App. 101, 122; 631 N.W.2d 67 (2001).

> To prove first-degree murder the prosecution must show that "the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Mette,* 243 Mich. App. 318, 330; 621 N.W.2d 713 (2000); *see also* MCL 750.31691)(a). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *People v. Marsack,* 231 Mich. App. 364, 370-371; 586 N.W.2d 234 (1998). To support a finding that a defendant aided and abetted a crime, the prosecutor must show: (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time [the defendant] gave aid and encouragement. . . . *Robinson, supra.*
>
> Testimony was presented against Hernandez showing that he owned a black four-door Dodge Stratus in 2004, but the vehicle "disappeared." The police recovered from the Longworth home photographs of Hernandez possessing a gray semi-automatic handgun and evidence of his gang affiliation. The evidence also showed that in Hernandez's post-arrest statement he admitted his involvement in the shooting. . . .
>
> The evidence was sufficient for a jury to conclude that the elements for a first-degree murder conviction were proven, i.e., that defendant intentionally killed Mejia and that the act of killing was premeditated and deliberate. See *Mette, supra.* Although no evidence was presented which showed that Hernandez was directly responsible for Mejia's death, the evidence showed that Mejia died from multiple gunshot wounds and that Hernandez admitted to shooting at Mejia. The evidence also showed that at least two handguns were involved in Mejia's death. "A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *Robinson, supra.* The trial court did not err in denying defendant's motion for a directed verdict of acquittal on the charge of first-degree murder.

*Perez-Hernandez*, 2007 WL 162520, at *8-9.

Petitioner challenges the sufficiency of the evidence on the ground that his actions were not premeditated and deliberate. Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate."

*People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack,* 586 N.W.2d 234, 371 (Mich. Ct. App. 1998). In addressing Petitioner's claim that the prosecutor failed to establish premeditation and deliberation, the Michigan Court of Appeals considered the following facts: Petitioner went to El Comal after feuding with rival gang members, and he went there with a loaded weapon. Petitioner admitted to shooting Ponce-Mejia. Also, after the shooting, Petitioner fled the scene. The state court held that, based upon the foregoing facts, a rational trier of fact could have found Petitioner guilty of first-degree murder beyond a reasonable doubt.

Petitioner has not presented any evidence to show that the state court's findings of fact were erroneous. Photographs recovered from the house at 8390 Longworth tended to show Petitioner's gang affiliation and did illustrate his possession of weapons. In addition, Secretary of State records supported that Petitioner had a vehicle registered to him which matched the description of the vehicle which was seen speeding by the scene of the shooting immediately following the events giving rise to the charges. Petitioner's uncle testified that this vehicle disappeared. The Michigan Court of Appeals' conclusion that all of the elements of first-degree murder were satisfied, being accorded a presumption of correctness, did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

## III. CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.") (overruled on other grounds).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show . . . that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the court will decline to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that the petition for writ of habeas corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES TO ISSUE a certificate of appealability.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: June 30, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2009, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522